# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| LAGOS et al. | § | |
| | § | |
| versus | § | CIVIL ACTION NO. H-11-4523 |
| | § | |
| | § | |
| COGENT COMMUNICATIONS, INC. | § | |

## ORDER

Pending before the Court is Plaintiffs' Motion for Notice to Potential Plaintiffs and for Conditional Certification. (Instrument No. 19). Defendant filed a response opposing Plaintiffs' motion (Instrument No. 23), and Plaintiffs filed a reply. (Instrument No. 26). The motion was heard on Friday, November 2, 2012.

### I.

On December 21, 2011, Plaintiffs Ramon Lagos ("Lagos"), Michelle Sparrow ("Sparrow"), and Carla Obasuyi ("Obasuyi") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, filed suit against Defendant Cogent Communications, Inc. ("Defendant" or "Cogent") to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Instrument Nos. 1, 11).

Plaintiffs seek conditional class certification of and notice to the following individuals: "All current and former Global Account Managers and Regional Account Managers, employed by COGENT COMMUNICATIONS, INC. between December 21, 2008 to the present, who worked over 40 hours in a work week." (Instrument No. 1 at 6).

Cogent is a multinational Internet Service Provider ("ISP") that provides Internet access and data transport services. (Instrument No. 23 at 11). To sell the services it offers, Cogent employs

Regional Account Managers ("RAMs") and Global Account Managers ("GAMs"). (Instrument Nos. 19 at 5; 23 at 11). At the hearing, Plaintiffs represented to the Court that Cogent employs approximately 850 RAMs and GAMs nationally, the vast majority of whom are RAMs. RAMs and GAMs are employed at multiple Cogent offices throughout the United States, and some GAMs are stationed in Europe. (Instrument Nos. 19 at 7; 23 at 11). Cogent structures its employees by sales team, with approximately nine RAMs and GAMs per team, with the majority being RAMs and approximately one to two GAMs. (Instrument No. 23. at 12). Sometime in 2011, however, Cogent began to move away from mixed sales teams to RAM-only and GAM-only teams "because of the job and quota differences" between the groups. (Instrument No. 23. at 12).

According to Defendant, the RAM and GAM positions "are meant to be outside sales positions." (Instrument No. 23. at 13). Both groups are meant to conduct meetings with customers face-to-face, canvas buildings for prospective customers, cold call prospective customers, maintain relationships with property managers or data center operators, network, and host lobby events. (Instrument No. 23. at 13-14). Additionally, account managers spend time inside the office preparing for and facilitating their outside sales activities. (Instrument No. 23. at 14). Cogent also notes that the GAM position is senior to the RAM position, and that GAMs sell products and services in a broader geographic area and to customers with more complex technical requirements. (Instrument No. 23. at 15). Accordingly, GAMs spend less time outside the office than RAMs; they also exercise more independent judgment and discretion. (Instrument No. 23. at 15-16).

Although all account managers are paid a salary plus commission, with the opportunity to earn bonuses, GAMs receive a higher base salary and are eligible to earn higher commissions than RAMs. (Instrument No. 23. at 16). Cogent classified RAMs and GAMs as exempt employees based on three exemptions: (1) outside sales; (2) administrative; and (3) highly compensated employee.

(Instrument No. 23. at 16). Cogent claims that the first exemption applies because it expects all account managers to conduct sales activities outside the office; the second applies because account managers use independent discretion and judgment when performing their sales activities and because they facilitate Cogent's ISP business; and the third applies to GAMs earning a total compensation of $100,000 or more per year, of which there are usually more than ten. (Instrument No. 23. at 16-7).

Plaintiffs were all employed in Cogent's Houston office. Lagos was employed as a GAM, and Sparrow and Obasuyi were employed as RAMs. (Instrument No. 11 at 2). Cogent employed Lagos from December, 2009, until September, 2011. (Instrument No. 23. at 12). Cogent employed Sparrow from September, 2009, until April, 2010. (Instrument No. 23. at 12).  Cogent employed Obasuyi from December, 2009, until August, 2010. (Instrument No. 23. at 12-13). Additionally, two plaintiffs have opted-in to the lawsuit, one from Florida and one from California. (Instrument No. 25).

Cogent classifies both RAMs and GAMs as exempt under the FLSA. (Instrument No. 11 at 3). Plaintiffs allege that this classification is improper because their primary job duties included non-exempt duties, and they seek overtime for all hours worked in excess of forty hours in a workweek. (Instrument No. 11 at 3-4).

## A.

Plaintiffs seek conditional certification of the proposed class under the FLSA. Plaintiffs allege that they are similarly situated to all RAMs and GAMs because all the employees share a common job description. (Instrument No. 19 at 6). Furthermore, Plaintiffs have worked alongside and trained with account managers in Houston and in other offices nationwide, allowing them to talk to other managers about their job duties. (Instrument No. 19 at 7). All account managers attended

Cogent's Headquarters Training in Washington, D.C., and spent time at other offices to receive "field" or "shadow" training. (Instrument No. 19 at 9). Plaintiffs also cite to a Cogent representative's deposition testimony that the account manager job description has not changed over the years and that every Cogent office has the same job description. (Instrument No. 19 at 7-8).

Additionally, Plaintiffs allege that all of Cogent's account managers share a common compensation plan. (Instrument No. 19 at 9). The plan provides for a base salary plus commissions, based on sales performance, and possible bonuses. (Instrument No. 19 at 9). No RAM or GAM is paid overtime for hours worked in excess of forty hours per week, and all account managers are classified as exempt. (Instrument No. 19 at 9-10). For those reasons, Plaintiffs seek conditional certification and notice.

Plaintiffs ask the Court to approve a proposed notice. This notice defines the proposed group as outlined above. (Instrument No. 19-2 at 2). It informs prospective class members that Cogent denies liability because it claims that Plaintiffs were properly classified as exempt and also notes that the Court has expressed no view of who should win the lawsuit. (Instrument No. 19-2 at 2). It informs potential plaintiffs that they must fill out and return the consent form within sixty days in order to join the lawsuit; otherwise, they cannot receive any recovery. (Instrument No. 19-2 at 2). It also informs potential plaintiffs that they may select their own attorney or contact the Plaintiffs' attorneys, whose contact information is listed.

The proposed consent form contains four paragraphs. (Instrument No. 19-3 at 2). In the first, the plaintiff agrees to pursue his or her overtime claims through the instant suit. (Instrument No. 19-3 at 2). In the second, the plaintiff acknowledges his or her desire to opt-in to the suit and be bound by the Court's judgment or any settlement. (Instrument No. 19-3 at 2). In the third, the plaintiff agrees to pursue the claim individually, unless or until the Court certifies the case as a collective

action. The plaintiff also agrees to serve as class representative if asked, and to allow another person to serve as class representative and act as his or her agent if necessary. Finally, in the event the case is certified and then de-certified, the plaintiff authorizes Plaintiffs' counsel to use the consent form to re-file the claims in a separate suit against Cogent. At the bottom of the form, there appears to be a typo; the form asks the plaintiff to "[r]eturn this form by to:" Plaintiffs' attorneys.

Plaintiffs seeks authorization from the Court to mail their proposed opt-in notice with a 60 day opt-in period. (Instrument No. 19 at 20). They also seek an order from this Court directing Defendant to disclose the name, last known address, personal and work email address, home and cellular telephone number, and the last four digits of the social security number of each potential plaintiff meeting the class requirements. (Instrument No. 19 at 20). Plaintiffs request this information within fifteen days of the order and in "usable electronic form." (Instrument No. 19 at 20). Plaintiffs then ask to be allowed to mail and email the notice and consent forms to potential plaintiffs, and request that the forms be posted at all of Defendant's branch offices in the U.S. (Instrument No. 19 at 20).

**B.**

Defendant argues that Plaintiffs' motion should be denied.

Defendant argues that, because some discovery has been conducted on the issue of class certification, the Court should apply a more stringent standard than the lenient *Lusardi* standard. Defendant contends that the parties have engaged in both written and deposition discovery on the class certification issue and that the Court should therefore apply the second-step analysis of *Lusardi*.

Even if the Court applies the lenient standard, Defendant argues that Plaintiffs cannot establish that a class of similarly situated plaintiffs exists. (Instrument No. 23 at 20). According to Defendant, no widespread policy ties Plaintiffs to their proposed class and that the manner in which

each RAM or GAM conducts sales activities varies from individual to individual. (Instrument No. 23 at 22). Furthermore, Defendant informed the Court at the certification hearing that Defendant believed no other plaintiffs would choose to opt-in if the Court certifies the class.

Additionally, Defendant argues that there was no FLSA violation because Defendant properly classified its RAMs and GAMs as exempt. (Instrument No. 23 at 23-24). It argues that this is fatal to Plaintiffs' attempt at class certification. Even if some of Defendant's RAMs and GAMs were mis-classified because some employees failed to perform their exempt duties, this would simply demonstrate the lack of any common policy binding Plaintiffs to the proposed class. (Instrument No. 23 at 24-25). Consequently, the determination of whether Plaintiffs are exempt necessitates an individualized inquiry, so notice and certification is not proper. (Instrument No. 23 at 25). Specifically, in the context of outside sales mis-classification cases, conditional certification and notice are improper because individual inquiry is necessary to determine whether each putative plaintiff meets the second prong of the outside sales exemption, which looks at whether the employee routinely worked outside the employer's office. (Instrument No. 23 at 25-26). Defendant also alleges that the RAM and GAM positions are distinct, requiring bifurcation of the class. (Instrument No. 23 at 34).

Defendant alleges that class certification is inappropriate because the named plaintiffs possess "personal vendettas" against Cogent, making them improper class representatives. (Instrument No. 23 at 10, 31). All three Plaintiffs complained about Jennie Strozier, their supervisor, and her alleged racial discrimination. (Instrument No. 23 at 32-33). Sparrow and Obasuyi wrote emails complaining about Strozier, and Lagos filed an EEOC Charge against her. (Instrument No. 23 at 32-33). Defendant asserts that, based on this information, "all three Plaintiffs communicate an intense disdain for Strozier," such that they "may have ulterior motives for pursuing this lawsuit

as a means of retaliating against Cogent." (Instrument No. 23 at 33). "Further, Sparrow and Lagos may be motivated by secondary gain in that they intend to use this FLSA lawsuit to bolster individual discrimination claims or as a carrot for settlement of other legal claims against Cogent. Moreover, these separate and unique claims could cause Sparrow and Lagos to become distracted from adequately representing the class." (Instrument No. 23 at 33). Defendant did not raise this issue at the class certification hearing, instead arguing for the first time that Plaintiffs are inappropriate class representatives because they all called Strozier an "absentee" supervisor.

Finally, if the Court does certify the class, Defendant requests that notice be limited to Cogent's Houston office, where Plaintiffs worked. (Instrument No. 23 at 35). Defendant asserts that Plaintiffs largely lack personal knowledge of how RAMs and GAMs outside Houston conduct their job duties, so nationwide certification is inappropriate. (Instrument No. 23 at 36).

## C.

Plaintiffs object to the Court conflating the two steps of *Lusardi* at this state, contending that case law does not support Cogent's argument, the parties did not engage in any meaningful level of discovery, and Cogent's conduct in the preliminary discovery phase negates its current contention that discovery is "substantially complete." (Instrument No. 26 at 7). Specifically, Defendant repeatedly objected to providing full and complete responses to Plaintiffs' discovery requests, responding that the topic "exceeds the scope of permissible discovery . . . given the stage of this lawsuit. The parties are currently in the 'limited' discovery phase.'" (Instrument Nos. 26 at 9; 26-4 at 7).

Plaintiffs note that there are two opt-in plaintiffs thus far, and they further argue that most courts do not require a plaintiff seeking class certification to present evidence of additional opt-in plaintiffs. (Instrument No. 26 at 10). Plaintiffs attempted to learn the names of potential plaintiffs,

but Defendant refused. (Instrument No. 26 at 10-11). Additionally, since Plaintiffs' original motion, Plaintiffs have filed opt-in forms from two additional plaintiffs, Keshav Kamath and Juan Ramos. (Instrument No. 25). These plaintiffs work in Los Angeles and Miami. (Instrument No. 26 at 12). Plaintiffs do not inform the Court whether Kamath and Ramos are RAMs or GAMs.

Additionally, Plaintiffs argues that Defendant cannot defeat notice by arguing the merits of the FLSA claim at this early stage of litigation. (Instrument No. 26 at 13). Plaintiffs assert that examining the individual situation of each plaintiff is a second-stage inquiry, inappropriate for the first step of *Lusardi*. Plaintiffs argue that simply because Defendant claims that the "outside sales" exemption to the overtime requirement applies, this exemption is not too individualized to defeat certification. (Instrument No. 26 at 16). This argument is merit-based and, Plaintiffs contend, inappropriate at this stage. Additionally, Plaintiffs argue that potential plaintiffs are similarly situated for the purpose of notice because all of Cogent's GAMs and RAMs conduct the same general duties, Cogent uses the same job description of all of its account managers for recruiting purposes, all account managers are treated as exempt, and none are paid overtime. (Instrument No. 26 at 14-15).

Plaintiffs deny that the class should be bifurcated. (Instrument No. 26 at 20). They argue that it is undisputed that all account managers are selling Cogent's data products, are paid under the same compensation plan, are not paid overtime, are hired under the same description, receive the same training, and perform essentially the same job junctions. (Instrument No. 26 at 20). Any bifurcation is inappropriate at this time, in Plaintiffs' view, because once all opt-in plaintiffs have joined and discovery is completed, Defendant may move for decertification or bifurcation at that time. Additionally, Plaintiffs object to limiting notice to Houston because Plaintiffs and declarants have demonstrated, based on personal knowledge, that account managers in at least six Cogent offices

perform the same job functions in the same way. (Instrument No. 26 at 21). Additionally, the two

opt-in plaintiffs are not located in Houston. (Instrument No. 26 at 22).

Plaintiffs also deny that Plaintiffs have a personal vendetta against Cogent. (Instrument No.

26 at 17). Although Plaintiffs do not deny they complained against Strozier, they deny any clear and

purposeful animus toward either Strozier or Cogent. (Instrument No. 26 at 18). The only named

plaintiff asked about this alleged animus testified that she "didn't personally have a problem with"

Strozier. (Instrument No. 26 at 19). Plaintiffs assert that Defendant's claim that "Plaintiffs may have

ulterior motives" is too conditional to make Plaintiffs unsuitable class representatives.

## II.

Section 207(a) of the FLSA requires covered employers to compensate non-exempt

employees at overtime rates for time worked in excess of statutorily-defined maximum hours. 29

U.S.C. § 207(a). Section 216(b) of the FLSA provides that a person may maintain an action on

"behalf of himself . . . and other employees similarly situated" to recover unpaid overtime wages.

29 U.S.C. § 216(b). Section 216(b) further provides, however, that "[n]o employee shall be a party

plaintiff to any such action unless he gives his consent in writing to become such a party and such

consent is filed in the court in which such action is brought." *Id.* A representative action brought

pursuant to this provision follows an "opt-in" rather than an "opt-out" procedure by facilitating

notice to potential plaintiffs. *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir.

1995), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 904 (2003).[1] District

courts have the discretion to allow a party asserting FLSA claims on behalf of others to notify

---

[1]        Although *Mooney* was litigation under the Age Discrimination in Employment Act ("ADEA"), it applies here
because the ADEA explicitly incorporates Section 216(b) of the FLSA.

potential plaintiffs that they may choose to "opt-in" to the suit. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step approach in *Lusardi*, which imposes different and less stringent requirements than a Rule 23 class action, and the *Shushan* approach, which imposes the requirements of a Rule 23 class action. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo.1990). In *Mooney*, 54 F.3d. at 1216, the Fifth Circuit found it unnecessary to determine which method is most appropriate. Since *Mooney*, however, the Fifth Circuit has acknowledged the inapplicability of Rule 23 to a § 216(b) action in at least one context, holding that the interlocutory appeal provisions of Rule 23(f) do not apply in a § 216(b) action because a "216(b) FLSA action is not a Rule 23 class action." *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932 (5th Cir. 2005).

Most courts use the "two-step ad hoc approach" in *Lusardi* as the preferred method for the similarly-situated analysis rather than Rule 23 requirements. *See Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 1989795, at *1 (S.D. Tex. May 2, 2008) ("The prevailing analysis used by federal courts . . . is the two-stage test set forth in *Lusardi*."); *Treme v. HKA Enters., Inc.*, No. 07-1134, 2008 WL 941777, at *2 (W.D. La. Apr.7, 2008) ("[A] review of the district court cases considering certification of an FLSA collective action reveals that a majority of courts in this circuit have favored the two-stage *Lusardi* approach.") (collecting cases); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ( "[T]he requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23."). The

Court therefore adopts the two-stage class certification approach to determine whether notice is appropriate in the current action.

The first stage of the *Lusardi* analysis is the "notice stage," in which the district court decides whether to issue notice to potential class members. *Mooney*, 54 F.3d at 1213-14. "*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Id.* at 1213. The court's decision in this first stage is often based only on the pleadings and affidavits that have been submitted. *Id.* at 1213-14. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Id.* at 1214. Although lenient, this standard requires a factual basis for allegations that potential members "were together the victims of a single decision, policy, or plan." *Id.* at 1214. At this first stage, there must be a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron*, 242 F. Supp. 2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214. Notice does not issue unless the court conditionally certifies the case as a collective action. *See Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1086

(S.D. Iowa 2007). The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *See Mooney*, 54 F.3d at 1214; *Lusardi*, 118 F.R.D. at 359. At that point, the court makes a factual determination as to whether there are similarly situated employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney*, 54 F.3d at 1214; *Villatoro*, 286 F. Supp. 2d at 810. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England*, 370 F. Supp. 2d at 508.

## III.

### A.

In determining whether notice is appropriate, the Court must determine whether there are other employees "who are similarly situated with respect to their job requirements and with regard to their pay provisions." *Clarke*, 370 F. Supp. 2d at 605 (quoting *Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). "Similarly situated does not mean identically situated. Rather, an FLSA class determination is appropriate when there is a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Id.* (quoting *Helmerich and Payne Int'l Drilling Co.*, Civil Action No. 92-0043, 1992 U.S. Dist. LEXIS 5367, *4-5 (E.D. La. April 16, 1992)).

This standard has been restated and further refined in *H&R Block v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999):

> [A]lthough the standard for satisfying the first step is lenient . . . the court still requires at least "substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination." Courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified . . .; whether

> affidavits of potential plaintiffs were submitted . . .; and whether evidence of a widespread discriminatory plan was submitted . . . .

*Id.* Notwithstanding the lenient standard for issuing notice, a plaintiff must make a minimal showing that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist; (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) that those individuals want to opt in to the lawsuit. *Prater v. Commerce Equities Mgmt. Co., Inc.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007) (citations omitted).  Before authorizing notice, courts typically require plaintiffs to provide some factual support for the allegations of classwide discrimination.  *Id.*

Evidence of similar job duties and a single policy which violates the FLSA is sufficient to find putative class members similarly situated. *Bernal v. Vankar Enters., Inc.*, No. SA-07-CA-695-XR, 2008 WL 791963, at *4 (W.D. Tex. Mar. 24, 2008);  *Bursell v. Tommy's Seafood Steakhouse*, No. H-06-0386, 2006 WL 3227334, at *1 (N.D. Tex. Nov. 3, 2006); *Clarke*, 370 F. Supp. 2d at 606.

## 1.

Before the Court may proceed to the class certification issue, it must determine whether to apply the first step of the *Lusardi* inquiry or to merge the two steps. Defendant has argued that the parties have conducted discovery for four months, and that it is therefore appropriate to hold Plaintiffs to a higher standard. Plaintiffs counter that discovery was extremely limited, it was only actively conducted for 30 days, and that Defendant objected to several of Plaintiffs' requests because the discovery was so limited. (Instrument No. 26 at 7-9).

If there has been extensive discovery, some courts collapse the *Lusardi* two-stage process and subject the plaintiffs to the more stringent second-stage burden. *See, e.g., Harris v. FFE Transp.*

*Servs., Inc* . No. 3:05–CV–0077–P, 2006 U.S. Dist. Court LEXIS 51437, at *7 (N.D. Tex. May 15, 2006) (applying the second stage of the *Lusardi* approach after the court gave the parties seven months to conduct discovery related to the certification issue); *Pfohl v. Farmers Ins. Grp.*, No. CV03–3080 DT (RCX), 2004 WL 554834, at *2–3 (C.D. Cal. Mar.1, 2004). However, it is only appropriate to increase the plaintiffs' burden "after discovery is largely complete and the matter is ready for trial." *Mooney*, 54 F.3d at 1214; *McKnight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 802–03 (S.D.Tex. 2010).

Defendant cites *Harris v. FFE Transportation Services, Inc.*, *Basco v. Wal–Mart Stores, Inc.*, and *Valcho v. Dallas County Hospital District* to support their argument that the court should apply a more stringent burden on the plaintiffs. Discovery was at a significantly more advanced stage in *Harris* and *Basco* than it is in this case. In *Harris*, the parties had over seven months to conduct discovery on the certification issue, and the court found that this amount of discovery was "sufficient to engage the second step of the analysis." *Harris*, 2006 WL 1994586, at *3. In this case, the parties only actively conducted discovery for one month. In *Basco*, the case was filed in 2000. No. 00–3184, 2004 WL 1497709, at *1 (E.D. La. Jul.2, 2004). The complaint was amended five different times. *Id.* at *2. The hearing for the certification of the collective action was held in 2004. *Id.* at *1. The court, in determining that it was appropriate to consider the motion for certification under the second stage of the *Lusardi* approach, noted the extensive discovery and procedural history and stated that the case was "not in a nascent stage." *Id.* at *4. This case has been pending for less than one year.

Finally, in *Valcho*, the plaintiff had conducted three months of discovery, and the court determined that it could "therefore reasonably expect [the plaintiff] to be able to produce evidentiary support beyond the bare allegations contained in her complaint and personal declaration." *Valcho*, 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008). The plaintiff, however, was unable to support her claim

after creating a website to contact potential plaintiffs and mailing written communications directly to them. *Id.* at 623. Here, Plaintiffs have only conducted one month of active discovery, and they have brought forth more evidence than the plaintiff in *Valcho*.

The parties in this case conducted limited first-stage discovery before the class certification hearing. Defendant objected to Plaintiffs' attempts to discover additional information. Therefore, the Court finds that discovery is still in the initial stage.

The Court finds that, based on the limited discovery that has been conducted to date, plaintiffs' burden should not be elevated. *See In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, H-11-2266, 2012 WL 3308880 (S.D. Tex. Aug. 10, 2012) (Miller, J.); *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802–03 (S.D. Tex. 2010) (Rosenthal, J.). Accordingly, the Court considers Plaintiffs' claim under the lenient step one *Lusardi* analysis.

**2.**

Defendant argues that Plaintiffs cannot establish that a class of similarly situated plaintiffs exists because no widespread policy ties Plaintiffs to their proposed class and that the manner in which each RAM or GAM conducts sales activities varies from individual to individual. (Instrument No. 23 at 22). Plaintiffs argue that they have filed opt-in forms from two additional plaintiffs (Instrument No. 25) and that they can meet the lenient requirements of showing that similarly situated individuals exist. The relevant policy from Plaintiffs' point of view is classifying the account managers as exempt under the FLSA.

For certification, Plaintiffs must make a minimal showing that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist; (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) that those individuals want to opt in to the lawsuit. *Prater*, 2007 WL 4146714, at *4. The Court finds

that, as a threshold matter, Plaintiffs has provided enough documentation that aggrieved individuals exist and want to opt in to the lawsuit. Plaintiffs have provided two additional opt-in forms, and both the new plaintiffs and the three named plaintiffs have testified that they know of other potential plaintiffs interested in joining the suit. (Instrument Nos. 19-6; 19-7; 19-8; 19-13; 19-14). This is sufficient to find that Plaintiffs have satisfied the requirements that other aggrieved individuals exist who want to op in to the lawsuit. *See, e.g., Villarreal v. St. Luke's Episcopal Hospital,* 751 F. Supp. 2d 902, 915 (S.D. Tex.2010) ("The court agrees that a plaintiff need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit."); *Prater v. Commerce Equities Mgmt. Co., Inc.,* H-07-2349, 2007 WL 4146714 (S.D. Tex. Nov. 19, 2007) (holding that although plaintiffs "present no affidavits from other apartment office employees expressing an interest in opting in, this is not fatal to the issuance of notice"); *cf. Simmons v. T–Mobile,* No. H–06–1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) ("The Court concludes that a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit. Others' interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice of a conditionally certified class of claimants in a collective action.").

The Court next turns to whether the named plaintiffs are similarly situated to other account managers throughout the U.S., and whether GAMs are similarly situated to RAMs. As a threshold matter, the Court notes that it will not consider any of Defendant's arguments relating to the merits of Plaintiffs' case. The Southern District of Texas has routinely held that exemptions to FLSA are merit-based and not relevant at the notice stage. *See, e.g., Wells Fargo,* 2012 WL 3308880, at *28; *Coffin v. Blessey Marine Servs., Inc.,* No. H–11–0214, 2011 WL 1103795, at *3 (S.D. Tex. Mar. 23, 2011) (Atlas, J.) (denying the defendant's request for discovery on the merits relating to an

exemption at the conditional certification stage); *Dreyer v. Baker Hughes Oilfield Ops., Inc.*, No. H–08–1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec.11, 2008) (Smith, J.) (holding that the defendant's argument that "several FLSA exemptions—such as administrative, computer employee, and highly compensated employee exemptions—counsels against conditional certification" failed "because exemptions are merits-based defenses to an FLSA claim" and thus the "possible applicability of one or more of them cannot defeat conditional certification"); *Foraker v. Highpoint Sw., Servs., L.P.*, No. H–06–1856, 2006 WL 2585047, at *4 n.16 (S.D. Tex. Sept. 7, 2006) (Atlas, J.) (rejecting the defendant's argument that conditional certification was inappropriate because the plaintiffs were supervisors and exempt under the executive exemption because the argument went "to the merits of whether the employees are exempt . . . and is not a persuasive basis to deny notice"). Accordingly, the Court holds that Defendant's merits-based arguments are irrelevant at this time.

The Court further holds that potential plaintiffs are similarly situated to the named plaintiffs. Plaintiffs allege that all account managers are selling Cogent's data products, are paid under the same compensation plan, are not paid overtime, are hired under the same description, receive the same training, and perform essentially the same job functions. (Instrument No. 26 at 14-15.) Although Defendant argues that "the manner in which each RAM or GAM conducts sales activities . . . varies from individual to individual," and that "a single job description and unified training are not determinative for purposes of determining whether similarly situated plaintiffs exist," it is only when the job duties of putative class members vary significantly that collective action certification should be denied. *Wells Fargo*, 2012 WL 3308880, at *27. Defendant claims that the named plaintiffs differ from the proposed class because the Houston supervisor, Jennie Strozier, was alleged to be an "absentee" supervisor. That is not a distinction that matters at this stage of the proceedings. Although

Defendant has established that there may be differences between individual plaintiffs, at this time these differences are not significant enough for the Court to deny certification. The overwhelming evidence presented by Plaintiffs is that the employees' main duties–selling Cogent's product–was the same, they were paid the same way, they received standardized training, and the job description was the same.

Whether the RAMs and GAMs are similarly situated to each other is a closer question, but using the above guiding factors, the Court reaches the same conclusion. Although Defendant has presented some evidence that the geographic range of the GAMs is larger than that of the RAMs and that GAMs work with more sophisticated clientele, the majority of the evidence–again, that their main duties were the same, they were paid the same way, they received standardized training, and the job description was the same–is sufficient to grant certification for the class as a whole at this stage. If Defendant wishes to move to decertify the class or to bifurcate it once discovery has been completed, the Court will reconsider the evidence.

Finally, the Court finds that it is appropriate to certify the class nationwide at this stage. Both of the opt-in Plaintiffs were located outside Texas, in Florida and California. Plaintiffs also assert that they have personal knowledge of the working conditions in at least six of Defendant's nationwide offices. Defendant admits that the same job description and basic duties apply nationwide. This is sufficient to certify the class nationwide.

**3.**

Defendant alleges that class certification is inappropriate because the named plaintiffs possess "personal vendettas" against Cogent, making them improper class representatives. (Instrument No. 23 at 10, 31). Although Plaintiffs do not deny they complained against Strozier, they deny any clear and purposeful animus toward either Strozier or Cogent. (Instrument No. 26 at 18).

In support of its claim, Defendant cites *Dubin v. Miller*, 132 F.R.D. 269 (D. Colo. 1990). In *Dubin*, the plaintiff appeared to selectively sue people he did not like. *Id.* at 272-73. *See also Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986) (removing plaintiff as personal representative because he harbored "unduly antagonistic attitude toward defendants" and noting that, "For at least 10 years, [plaintiff] has been involved in various disputes with defendants. Indeed, on his deathbed, [plaintiff] swore his two sons, the executors of his estate, to continue this litigation."). However, "a plaintiff's small personal animus is insufficient to render an otherwise qualified class representative inappropriate." *Id.* Furthermore, where named plaintiffs may be motivated by both their main claim and an additional motivation, courts have rejected charges of improper animus. *See, e.g., Robbins v. Moore Med. Corp.*, 91 CIV. 3701 (MEL), 1992 WL 396423 (S.D.N.Y. Dec. 21, 1992) ("The fact that [plaintiff] is not motivated to pursue the case solely by the opportunity to recover dollars but also because he is offended by what he believes to be unfair behavior on the part of the corporate defendant is not a grounds for disqualification.")

Only two cases in the Fifth Circuit appear to have considered this issue, albeit on substantially different facts. In *Feder v. Electronic Data Systems Corp.*, 429 F.3d 125 (5th Cir. 2005), defendants alleged that the plaintiff's failure to name potential parties with whom the plaintiff had a relationship disqualified the plaintiff as a class representative. *Id.* at 134. The court disagreed, finding that "generally, failure to join all defendants is a strategy choice, and except for a showing of unique circumstances, is probably not a ground for finding inadequacy." *Id.* at 135. In *In re Alcatel Alsthom*, MDL 1263, 1999 WL 33756548 (E.D. Tex. June 7, 1999), the court also disagreed with defendant's contention that a personal relationship between a plaintiff and another party made the plaintiff inadequate as a class representative. *Id.* at *6 ("The allegations are highly speculative, the

relationship is remote in time, and [plaintiff] has represented that he has had no contact with [the potential defendant] for several years.")

Although the facts in this case are dissimilar to those in *Feder* or *Alcatel*, the Court declines to find that the named plaintiffs should be disqualified as class representatives. Similar to *Alcatel*, Defendant has made only speculative allegations pointing to personal animus, which Plaintiffs have denied. In *Dubin* and *Kamerman*, the facts supporting the allegations of animus were much more persuasive, leading to the reasonable assumption that the plaintiffs there harbored undue animus. Here, however, Plaintiffs' complaints about their supervisor are a protected activity under Title VII, and they are completely unrelated to the case at hand. The Court therefore finds that the named plaintiffs are qualified class representatives. If, of course, evidence is developed during the course of discovery that the Plaintiffs are inappropriate to serve as class representatives, the parties may bring this information to the Court's attention.

Accordingly the court **GRANTS** Plaintiff's motion to conditionally certify the following class: "All current and former Global Account Managers and Regional Account Managers, employed by COGENT COMMUNICATIONS, INC. between December 21, 2008 to the present, who worked over 40 hours in a work week."

**B.      Notice**

On July 31, 2012, the Court granted Defendant's request to allow Defendant ten days to respond to Plaintiffs' requests, in Section IV of their Motion for Notice, concerning the (1) issuance of notice and consent forms to potential plaintiffs; and (2) disclosure of names and addresses. (Instrument No. 22 at 1-2).

Accordingly, the Court **STAYS** its ruling on the issue of notice. However, the statute of limitations, which runs from the date each plaintiff opts into the lawsuit, is tolled from the date of this order until the date Defendant files its objections as to notice.

## IV.

The Court **GRANTS in part and STAYS in part** Plaintiffs' Motion for Conditional Class Certification and Notice. (Instrument No. 19). Specifically, Plaintiff's motion to conditionally certify the class is granted. The Court stays its ruling on the issue of notice based on its July 31, 2012 order. (Instrument No. 22). Defendant has until November 19, 2012, to respond to Plaintiffs requests regarding (1) the issuance of notice and consent forms; and (2) the disclosure of names and addresses. Opt-in plaintiffs' statutes of limitation are tolled from the date of this order until the date Defendant files its objections as to notice.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 14th day of November, 2012, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**