**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RAMON LAGOS, MICHELLE SPARROW, and CARLA OBASUYI, Individually and on Behalf of Others Similarly Situated | § § § § § | |
| *Plaintiffs,* | § § | |
| | § | Civil Action No.: 4:11-cv-04523 |
| v. | § § | |
| COGENT COMMUNICATIONS, INC., | § § | |
| *Defendant.* | § § | |

**DEFENDANT COGENT COMMUNICATIONS, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Respectfully submitted,

*/s/ Matthew T. Deffebach*
Matthew T. Deffebach
State Bar No. 24012516
Southern District No. 24225
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone: (713) 547-2064
Telecopier: (713) 236-5631
matthew.deffebach@haynesboone.com

ATTORNEY-IN-CHARGE FOR
DEFENDANT

OF COUNSEL:

Meghaan C. McElroy
State Bar No. 24070241
Southern District No. 1062431
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone: (713) 547-2082
Telecopier: (713) 236-5513
meghaan.mcelroy@haynesboone.com

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing instrument was served on counsel for Plaintiffs in accordance with the Federal Rules of Civil Procedure and Local Rules of this Court on November 20, 2013 at the address and in the manner set forth below.

Todd Slobin                                    *Via ECF*
Daryl J. Sinkule
Sidd Rao
SHELLIST, LAZARZ, SLOBIN, LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone:  (713) 621-2277
Telecopier:  (713) 621-0993

*/s/ Matthew T. Deffebach*
Matthew T. Deffebach

H-1016429_2

# TABLE OF CONTENTS

I.     SUMMARY ……………………………………………………………..1

II.    NATURE AND STAGE OF PROCEEDING …………………………………..2

III.   ISSUE PRESENTED …………………………………………………3

IV.    SUMMARY OF RELEVANT FACTS …………………………………………3

       A.  Procedural Case History and Filing of Notices of Consent …………………....3

       B.  The 3-Year Opt-In Plaintiffs' and the 2-Year Opt-In Plaintiffs'
           Dates of Employment with Cogent ……………………………………………5

       C.  Cogent's Sales Organization ……………………………………………..7

       D.  RAMs and GAMs as Exempt Employees Under the FLSA ……………………..8

       E.  Cogent's Decision to Classify RAMs and GAMs as Exempt ……………………9

V.     STANDARD OF REVIEW …………………………………………………10

VI.    ARGUMENTS AND AUTHORITIES ……………………………………………..11

       A.  The FLSA Generally Provides for a Two-Year Statute of
           Limitations ……………………………………………………………11

       B.  The Claims of the 3-Year Opt-In Plaintiffs Are Time Barred
           Regardless of the Applicable Statute of Limitations Period  ……………………12

       C.  The FLSA's Two-Year Statute of Limitations Applies to This
           Case Because Cogent Did Not Willfully Violate the FLSA ……………………13

VII.   CONCLUSION …………………………………………………………..16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. TGF Precision Haircutters, Inc.*,
No. H-05-3189, 2006 WL 1030067 (S.D. Tex. Apr. 19, 2006)................................................13

*Allen v. Coil Tubing Servs., L.L.C.*,
846 F. Supp. 2d 678 (S.D. Tex. 2012) ....................................................................12,  15, 16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................................10, 11

*Camp v. The Progressive Corp.*,
No. 01-2680, 2003 WL 22800948 (E.D. La. Nov. 25, 2003)............................................13, 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).............................................................................................................10

*Cox v. Brookshire Grocery Co.*,
919 F.2d 354 (5th Cir. 1990) ...............................................................................................11

*Espenscheid v. DirectSat USA, LLC*,
No. 09-cv-625-bbc, 2011 WL 10069108 (W.D. Wis. Apr. 11, 2011)....................................13

*Gorey v. Manheim Servs. Corp.*,
788 F. Supp. 2d 200 (S.D.N.Y. 2011).....................................................................................15

*Hanscom v. Carteret Mortgage Corp.*,
No. 1:06-CV-2483, 2008 WL 4845832 (M.D. Pa. Nov. 5, 2008) ..........................................14

*Hernandez v. Caviness Packing Co., Inc.*,
No. 2:07-CV-142-J, 2008 WL 2404963 (N.D. Tex. June 13, 2008) ......................................13

*Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*,
579 F.3d 546 (5th Cir. 2009) ..........................................................................................11, 15

*Khadera v. ABM Indus. Inc.*,
No. C08-0417 RSM, 2012 WL 581580 (W.D. Wash. Feb. 22, 2012)....................................13

*Martin v. PepsiAmericas, Inc.*,
No. 1:07CV91-SA-JAD, 2008 WL 4755394 (N.D. Miss. Oct. 28, 2008).............................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)........................................................................................................10, 11

*McLaughlin v. Richland Shoe Co.*,
486 U.S. 128 (1988)........................................................................................................11, 12

*Mireles v. Frio Foods, Inc.*,
   899 F.2d 1407 (5th Cir. 1990) .......................................................................12, 14

*Palmieri v. Nynez Long Distance Co.*,
   No. 04-138PS, 2005 WL 767170 (D. Me. Mar. 28, 2005) .................................14, 15

*Reyes v. Tex. EzPawn, LP*,
   459 F. Supp. 2d 546 (S.D. Tex. 2006) ..............................................................11, 16

*Rodriguez v. Potter*,
   No. H-03-5325, 2005 WL 2030838 (S.D. Tex. Aug. 22, 2005) ..............................13

*Sandoz v. Cingular Wireless LLC*,
   553 F.3d 913 (5th Cir. 2008) ..................................................................................12

*Scott v. Farouk Sys., Inc.*,
   No. H-06-2182, 2007 WL 2317156 (S.D. Tex. Aug. 8, 2007) ...............................16

*Switzer v. Wachovia Corp.*,
   No. H-11-1604, 2012 WL 1231743 (S.D. Tex. Apr. 12, 2012)...............................12

*Valcho v. Dallas County Hosp. Dist.*,
   658 F. Supp. 2d 802 (N.D. Tex. 2009) ....................................................................16

*Villegas v. Dependable Const. Servs., Inc.*,
   No. 4:07-cv-2165, 2008 WL 5137321 (S.D. Tex. Dec. 8, 2008) ......................12, 13

*Weaver v. CCA Indus., Inc.*,
   529 F.3d 335 (5th Cir. 2008) ..................................................................................11

**STATUTES**

29 U.S.C. § 255(a) ...........................................................................................................11

29 U.S.C. § 256..............................................................................................................12

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(c) ......................................................................................................10

Federal Rule of Evidence 1006........................................................................................6

## DEFENDANT COGENT COMMUNICATIONS, INC.'S MOTION FOR
## PARTIAL SUMMARY JUDGMENT

Based on Federal Rule of Civil Procedure 56 ("Rule 56"), Defendant Cogent Communications, Inc. ("Cogent") files this Motion for Partial Summary Judgment ("Motion") on statute of limitations grounds on the Fair Labor Standards Act ("FLSA") claims of the Plaintiffs to this conditionally certified collective action.

## I.     SUMMARY

Named Plaintiffs Ramon Lagos, Michelle Sparrow, and Carla Obasuyi (collectively, "Named Plaintiffs") obtained conditional certification of a nationwide collective action under the FLSA of all current and former Regional Account Managers ("RAMs") and Global Account Managers ("GAMs") based on this Court's holding, applying the lenient conditional certification standard, that the Named Plaintiffs were similarly situated to the class of potential plaintiffs.  157 individuals ("Opt-In Plaintiffs") have filed Notices of Consent to join this conditionally certified collective action.  However, the claims of 78 Opt-In Plaintiffs are time barred as a matter of law.

Specifically, 45 Opt-In Plaintiffs (the "3-Year Opt-In Plaintiffs") filed their Notices of Consent more than three years after their employment relationships ended with Cogent. Accordingly, the claims of the 3-Year Opt-In Plaintiffs are time barred regardless of whether Cogent's purported FLSA violations were willful.  Further, another 33 Opt-In Plaintiffs (the "2-Year Opt-In Plaintiffs") filed their Notices of Consent more than two years, but less than three years, after their employment relationships ended with Cogent.  The claims of the 2-Year Opt-In Plaintiffs also are time barred because Cogent's purported violations were not willful as a matter of law.  Therefore, the claims of these 78 Opt-In Plaintiffs should be dismissed with prejudice from this lawsuit.  Further, the claims of the remaining Opt-In Plaintiffs and the Named Plaintiffs likewise should be limited by the two-year statute of limitations.

## II.   NATURE AND STAGE OF PROCEEDING

On December 21, 2011, the Named Plaintiffs filed their Original Collective Action Complaint against Cogent alleging that Cogent violated the FLSA by improperly classifying its RAMs and GAMs as exempt employees.  (Dkt. # 1.)  On August 28, 2012, prior to this Court authorizing notice to the putative class, two individuals filed consents to join this lawsuit.  (Dkt. # 25.)  Then, on November 14, 2012, this Court granted the Named Plaintiffs' request to conditionally certify a collective action and authorized the Named Plaintiffs to provide notice of the collective action to the putative class.  (Dkt. # 29.)  During the opt-in period, 141 individuals filed consents to join the collective action.  (Dkt. # 34-54.)  Another 14 individuals filed consents to join the collective action after the opt-in deadline[1], resulting in a total class of 157 Opt-In Plaintiffs[2].  (Dkt. # 55-60, 62, 64.)

After the Opt-In Plaintiffs joined the lawsuit, the parties engaged in written and deposition discovery on the issue of whether Cogent's alleged misclassification of the Named Plaintiffs and the Opt-In Plaintiffs (collectively, "Plaintiffs") was willful.  Accordingly, now that the parties have completed discovery on this issue, Cogent moves for summary judgment on the FLSA claims of the 3-Year Opt-In Plaintiffs and the 2-Year Opt-In Plaintiffs because their claims are time barred as a matter of law.

---

[1] On October 24, 2013, Cogent filed its Motion to Compel, Motion to Strike, and Motion to Dismiss, seeking, in part, the dismissal of these 14 Opt-In Plaintiffs from this lawsuit by striking from the record their untimely Notices of Consents.  (Dkt. # 79.)

[2] Of the 157 Opt-In Plaintiffs, Cogent maintains that 123 Opt-In Plaintiffs should be dismissed for the following reasons: (1) 78 Opt-In Plaintiffs' claims are time barred; (2) 47 Opt-In Plaintiffs failed to respond to Cogent's interrogatories and/or supplement their answers by this Court's deadline (4 of which are also time barred); (3) 14 Opt-In Plaintiffs filed Notices of Consent past the opt-in deadline (8 of which are also time barred and 5 of which failed to supplement their interrogatory answers); and (4) 11 Opt-In Plaintiffs are subject to mandatory arbitration agreements (6 of which are also time barred and 4 of which failed to supplement their interrogatory answers). Cogent has moved to dismiss these 123 Opt-In Plaintiffs through this Motion and its Motion to Compel, Motion to Strike, and Motion to Dismiss.

### III.    ISSUE PRESENTED

The issues presented by this Motion are as follows:

- *3-Year Opt-In Plaintiffs' Claims.*  Whether the claims of the 3-Year Opt-In Plaintiffs are time barred by the FLSA statute of limitations?

- *2-Year Opt-In Plaintiffs' Claims.*  Whether the claims of the 2-Year Opt-In Plaintiffs are time barred by the FLSA statute of limitations because Cogent's purported FLSA violations were not willful as a matter of law?

- *Remaining Opt-In Plaintiffs and Named Plaintiffs.*  Whether the claims of the remaining Opt-In Plaintiffs and the Named Plaintiffs should be limited by the FLSA's two-year statute of limitations?

### IV.    SUMMARY OF RELEVANT FACTS

**A.    Procedural Case History and Filing of Notices of Consent.**

1.      On December 21, 2011, the Named Plaintiffs filed their Original Collective Action Complaint against Cogent alleging that Cogent violated the FLSA by improperly classifying its sales personnel as exempt employees and, thus, failing to pay them overtime compensation.  (Dkt. # 1.)  The Named Plaintiffs filed their lawsuit against Cogent as a collective action seeking to represent all similarly situated sales personnel nationwide.

2.      On August 28, 2012, two individuals, Keshav Kamath and Juan G. Ramos, filed their Consent to Become a Party Plaintiff ("Notice of Consent") forms with this Court and thereby joined this collective action.[3]  (Dkt. # 25.)

3.      Then, on November 14, 2012, this Court granted the Named Plaintiffs' request to conditionally certify a collective action and authorized the Named Plaintiffs to provide notice of the collective action to the putative class.  (Dkt. # 29.)  On November 30, 2012, this Court set a 60-day period for putative plaintiffs to opt-in to the conditional class, which would begin to run from the date the Named Plaintiffs sent the Notice to Potential Plaintiffs and Consent to Become

---

[3] The claims of Juan G. Ramos, who is one of the 2-Year Opt-In Plaintiffs, are subject to this Motion.

a Party Plaintiff forms to the putative plaintiffs.  (Dkt. # 32.)  On December 14, 2012, the Named

Plaintiffs mailed the Notice and Consent forms to the potential opt-in plaintiffs.  Accordingly,

the opt-in period began to run from December 14, 2012 and ended on February 12, 2013.

4.     Between December 14, 2012 and February 12, 2013, 141 individuals filed their

Notices of Consent to join this conditionally certified collective action.  (Dkt. # 34-54.)  Then,

between February 13, 2013 and March 28, 2013, after the opt-in period had ended, another 14

individuals filed their Notices of Consent to join this collective action.  (Dkt. # 55-60, 62, 64.)

Accordingly, a total of 157 individuals filed Notices of Consent to join this conditionally

certified collective action.

5.     Specifically, the 3-Year Opt-In Plaintiffs and the 2-Year Opt-In Plaintiffs filed

their Notices of Consent on the following dates:

- August 28, 2012:  Juan Ramos (Dkt. # 25);

- December 14, 2012:  Richard Hodge and Anwar Timol (Dkt. # 34);

- December 18, 2012:  David Durso, Rian Geesaman, John Harris, Harris Vasquez, and Garett West (Dkt. # 35);

- December 19, 2012:  Brian Baker, Angelito Muyot, Al Salvatierra, and Tony Trinh (Dkt. # 36);

- December 20, 2012:  Shawn McCarthy (Dkt. # 37);

- December 21, 2012:  Cosmin Banu and Rodney Settles (Dkt. # 38);

- December 28, 2012:  Jason Arnold, George Barksdale, William Chen, David Doeum, Michael Kim, Marc Mango, Nick Movsisyan, Phu "Bobby" Nguyen, Nathaniel Ramsey, Steve Rapposelli, Daniel Ritter, Dana Rogers, Nicholas Sempert, Michael Sheeran, Harmandeep Singh, Tasos Vatikiotis, Alfred Viola, and Novelette Witt (Dkt. # 39);

- January 7, 2013:   Jeffrey Clement, Devon Hosey, Jane Lacap, Edmund Martin, Christopher Minnehan, Sergei Rylkov, Brett Sampson, Melissa Sontag, Keith Swick, Timothy Thompson, and Allison White (Dkt. # 40);

- January 9, 2013:  Mathew Coniglio (Dkt. # 41);

- January 11, 2013:  Marc Shea and Jeff White (Dkt. # 42);

- January 14, 2013:  Nancy Estrada and Eric Rinker (Dkt. # 43);

- January 17, 2013:  Selena Cruz and Jackson Hou (Dkt. # 45);

- January 22, 2013:  Paul Levine, Geoffrey Lichtman, and Alex Rayter (Dkt. # 46);

- January 24, 2013:  Daniel Brambilla (Dkt. # 47);

- January 25, 2013:  Robert Boykin (Dkt. # 48);

- February 4, 2013:  Francisco Cuartas and David Welk (Dkt. # 51);

- February 6, 2013:  Robert Mertz (Dkt. # 52);

- February 11, 2013:  Joshua Bafalis, Kevin Driscoll, John "Jordan" Fleming, Kevin Frye, James Benjamin Moss, and Bryan Murphy (Dkt. # 53);

- February 12, 2013:  Mark Allen, Carl Toni Jefferson, Neal Russo, Nichole Santacroce, and Pamela Galban (Dkt. # 54);

- February 13, 2013:  John Gordon and Benjamin Rubin (Dkt. # 55);

-  February 15, 2013:  Sandeep Seshadri (Dkt. # 57);

- February 20, 2013:  Ruben Boykin (Dkt. # 58);

- March 8, 2013:  Peet Sapsin (Dkt. # 59);

- March 20, 2013:  Bruce MacNevin and Jeffrey Meaker (Dkt. # 60, 62);  and

- March 28, 2013:  Kevin Hynes (Dkt. # 64).

**B.    The 3-Year Opt-In Plaintiffs' and the 2-Year Opt-In Plaintiffs' Dates of Employment with Cogent.**

6.      Attached as Exhibit A to this Motion is a spreadsheet listing the 3-Year Opt-In Plaintiffs' respective dates of employment with Cogent (*i.e.*, their hire and termination dates). (Ex. A, 3-Year Opt-In Plaintiffs Chart.)  Attached as Exhibit B to this Motion is a spreadsheet listing the 2-Year Opt-In Plaintiffs' respective dates of employment with Cogent.  (Ex. B, 2-Year

Opt-In Plaintiffs Chart.)  The data contained in Exhibits A and B are a summary of records that are organized for this Court's convenience pursuant to Federal Rule of Evidence 1006.  *See* FED. R. EVID. 1006.

7.      Additionally, attached as Exhibits C-1 through C-45 to this Motion are the Employee Profile Reports for each of the 3-Year Opt-In Plaintiffs.[4]  Cogent previously maintained (and continues to maintain as a business record) an Employee Profile Report for every employee, which documented, among other things, the employee's hire date and termination date.[5]  (Szott Decl. ¶ 3, attached as Ex. C.)

8.      When Cogent changed payroll providers in July 2010, Cogent discontinued the use of Employee Profile Reports to document employees' dates of hire and termination.  (*Id.*)  Instead, an employee in Cogent's Human Resources Department sends an internal e-mail documenting the date of the employee's termination.  (*Id.* at ¶ 4.)  Further, Cogent is able to generate from its new payroll system an Employee Departure form that documents, among other things, an employee's termination date.  (*Id.*)  Attached as Exhibits C-46 through C-78 are the termination e-mails and Employee Departure forms for each of the 2-Year Opt-In Plaintiffs.[6, 7]

---

[4] The following exhibit number corresponds to each of the 3-Year Opt-In Plaintiffs: Jason Arnold (Ex. C-1); Brian Baker (Ex. C-2); Robert Boykin (Ex. C-3); Ruben Boykin (Ex. C-4); Daniel Brambilla (Ex. C-5); William Chen (Ex. C-6); Jeffrey Clement (Ex. C-7); Mathew Coniglio (Ex. C-8); Selena Cruz (Ex. C-9); David Durso (Ex. C-10); Nancy Estrada (Ex. C-11); John "Jordan" Fleming (Ex. C-12); Pamela Galban (Ex. C-13); Rian Geesaman (Ex. C-14); John Gordon (Ex. C-15); John Harris (Ex. C-16); Kevin Hynes (Ex. C-17); Michael Kim (Ex. C-18); Geoffrey Lichtman (Ex. C-19); Bruce MacNevin (Ex. C-20); Marc Mango (Ex. C-21); Edmund Martin (Ex. C-22); Shawn McCarthy (Ex. C-23); Robert Mertz (Ex. C-24); Christopher Minnehan (Ex. C-25); James Benjamin Moss (Ex. C-26); Nick Movsisyan (Ex. C-27); Daniel Ritter (Ex. C-28); Dana Rogers (Ex. C-29); Benjamin Rubin (Ex. C-30); Al Salvatierra (Ex. C-31); Nichole Santacroce (Ex. C-32); Nicholas Sempert (Ex. C-33); Sandeep Seshadri (Ex. C-34); Rodney Settles (Ex. C-35); Marc Shea (Ex. C-36); Melissa Sontag (Ex. C-37); Timothy Thompson (Ex. C-38); Anwar Timol (Ex. C-39); Tony Trinh (Ex. C-40); Harris Vasquez (Ex. C-41); Tasos Vatikiotis (Ex. C-42); David Welk (Ex. C-43); Garett West (Ex. C-44); and Allison White (Ex. C-45).

[5] The Employee Profile Reports attached as Exhibits C-1 through C-45 to this Motion are authenticated as Cogent business records by the Declaration of Ted Szott, attached to this Motion as Exhibit C.  (Ex. C, Szott Decl. ¶¶ 5, 7.)

[6] The following exhibit number corresponds to each of the 2-Year Opt-In Plaintiffs:  Mark Allen (Ex. C-46); Joshua "Josh" Bafalis (Ex. C-47); Cosmin Banu (Ex. C-48); George Barksdale (Ex. C-49); Francisco "Frank" Cuartas (Ex.

C.    **Cogent's Sales Organization.**

9.      Cogent is a multinational Internet Service Provider that provides Internet access and data transport services over its fiber optic, IP data-only network, and collocation in its Internet data centers.  (Bubeck Aff. ¶ 3, attached as Ex. D; Schaeffer Dep. 19:8-13, attached as Ex. E.)  To sell the services it offers, Cogent employs a global sales force comprised of RAMs and GAMs.  (Ex. D at ¶ 3; *see also* Ex. E at 26:15-27:7.)  The RAMs and GAMs are located across North America and Europe (GAMs only) in strategic sales offices opened by Cogent based on where it has laid its network and established its data centers.[8]  (Ex. D at ¶ 4; Karnes Dep. 11:20-12:1, attached as Ex. F.)

10.     The RAM and GAM positions are meant to be outside sales positions.  (*See* Ex. D at ¶¶ 5, 9; Ex. F at 49:16-51:4.)  Cogent's mandate is very clear in that RAMs and GAMs are supposed to conduct meetings with customers face-to-face, canvas/walk buildings for prospective customers, cold call on prospective customers, maintain relationships with property managers or data center operators, network with individuals to build business, and host lobby events, among other activities.  (*See* Ex. D at ¶ 5; Ex. F at 52:23-25; Nomura Aff. ¶¶ 4-12, 17, 20, 27, attached as Ex. G; Whatley Aff. ¶¶ 3-5, 8-11, 13, attached as Ex. H; Green Aff. ¶¶ 3-6, 8-

---

C-50); David Doeum (Ex. C-51); Kevin Driscoll (Ex. C-52); Kevin Frye (Ex. C-53); Richard "Rich" Hodge (Ex. C-54); Devon Hosey (Ex. C-55); Jackson Hou (Ex. C-56); Carl Toni Jefferson (Ex. C-57); Jane Lacap (Ex. C-58); Paul Levine (Ex. C-59); Jeffrey "Jeff" Meaker (Ex. C-60); Bryan Murphy (Ex. C-61); Angelito Muyot (Ex. C-62); Phu "Bobby" Nguyen (Ex. C-63); Juan Ramos (Ex. C-64); Nathaniel "Nate" Ramsey (Ex. C-65); Steve Rapposelli (Ex. C-66); Alex Rayter (Ex. C-67); Eric Rinker (Ex. C-68); Neal Russo (Ex. C-69); Sergei Rylkov (Ex. C-70); Brett Sampson (Ex. C-71); Peet Sapsin (Ex. C-72); Michael "Mike" Sheeran (Ex. C-73); Harmandeep "Harman" Singh (Ex. C-74); Keith Swick (Ex. C-75); Alfred Viola (Ex. C-76); Jeff White (Ex. C-77); and Novelette Witt (Ex. C-78).

[7] The termination e-mails and Employee Departure forms attached as Exhibits C-46 through C-78 to this Motion are authenticated as Cogent business records by the Declaration of Ted Szott, attached to this Motion as Exhibit C.  (Ex. C, Szott Decl. ¶¶ 6-7.)

[8] Each sales office is managed by a Regional Sales Manager.  (Ex. D at ¶ 4; Ex. F at 10:20-11:3.)  Above the Regional Sales Managers are Directors of Sales, who are each responsible for overseeing approximately four sales teams.  (Ex. F at 11:4-6.)  The Directors of Sales report to their respective Vice President of Sales, who in turn report to Cogent's Chief Revenue Officer and Vice President of Global Sales.  (*Id.* at 10:3-6, 7:24-8:6.)

9, 11, 14, attached as Ex. I; Anderson Aff. ¶ 4, attached as Ex. J; Luciere Aff. ¶ 4, attached as Ex. K.)  In addition to these sales activities outside the office, RAMs and GAMs do spend time inside the office to prepare for and facilitate their outside sales activities.  (*See* Ex. D at ¶ 5; Ex. J at ¶ 5; Ex. K at ¶ 7.)

**D.     RAMs and GAMs as Exempt Employees Under the FLSA.**

11.     Cogent classifies its RAMs and GAMs as exempt employees under the FLSA based on three exemptions: (1) outside sales; (2) administrative; and (3) highly compensated employee.[9]  (Ex. F at 197:17-199:1.)  The primary exemption that applies to both positions is the outside sales exemption.[10]  (*Id.* at 197:25-198:6.)  Cogent has structured the RAM and GAM positions to be outside sales positions and expects the RAMs and GAMs to regularly be conducting sales activities outside the office.  (*Id.* at 49:19-50:25; *see also* Ex. E at 32:1-25; Anderson Dep. 58:1-7, 59:24-60:11, 72:16-73:4, attached as Ex. M.)  As a result, Cogent delivers a clear message to its RAMs and GAMs that their positions are meant to be that of outside sales employees and, as such, they should be regularly getting out in the field for face-to-face time with customers.[11]  (*See* Ex. D at ¶¶ 5, 8, 10; Ex. F at 49:16-51:6, 74:25-75:19; Ex. G at ¶¶ 17-18, 20; Ex. H at ¶¶ 8, 12, 17-20; Ex. I at ¶¶ 9-11, 14; Ex. K at ¶¶ 9-10.)

---

[9] Cogent pays its RAMs and GAMs on a salary plus commissions basis, with the opportunity to earn bonuses.  (Ex. F at 132:4-133:18; Bubeck Dep. 109:4-9, attached as Ex. L.)

[10] The other exemption that applies to both positions is the administrative exemption based on (i) the independent discretion and judgment exercised by RAMs and GAMs in performing their sales activities, and (ii) their role within Cogent of facilitating Cogent's ISP business by selling its services and products to customers.  (Ex. F at 31:2-17, 36:10-19, 186:25-188:1, 198:16-199:1, 201:17-21; *see also* Ex. G at ¶¶ 20-23; Ex. I at ¶ 18; Ex. K at ¶¶ 11, 13.)  The highly compensated employee exemption additionally applies to those GAMs earning a total compensation of $100,000 or more per year given the significant discretion and independent judgment exercised by GAMs in the performance of their sales duties.  (Ex. F at 198:7-15.)

[11] Nevertheless, Cogent provides each RAM and GAM the discretion to determine the amount of time he or she will spend inside the office versus outside the office performing sales activities.  (*See* Ex. D at ¶¶ 10, 11; Ex. F at 139:11-17, 153:2-13; Ex. G at ¶ 20; Ex. I at ¶¶ 7, 14-16, 18.)  Cogent further provides each RAM and GAM the discretion to create his or her daily work schedule, determine how and where to conduct his or her sales activities, and decide which opportunities to pursue and to whom to sell.  (*See* Ex. D at ¶¶ 10-11; Ex. G at ¶ 20; Ex. J at ¶¶ 10-13.)

E.      **Cogent's Decision to Classify RAMs and GAMs as Exempt.**

12.     Cogent's founder and Chief Executive Officer, Dave Schaeffer ("Schaeffer"), made the decision to classify Cogent's RAMs and GAMs as exempt under the FLSA when he started the company in 1999.  (Schaeffer Decl. ¶ 2, attached as Ex. N.)  Schaeffer's decision to classify Cogent's sales force as exempt under the FLSA was based on the following factors: (i) his general knowledge and understanding of the FLSA and the distinction between exempt and non-exempt employees; (ii) his experience classifying employees as exempt and non-exempt in companies that he founded prior to Cogent; (iii) the nature of the position of Cogent's sales employees; and (iv) the standard in the telecommunications industry of classifying sales employees as exempt.  (Ex. N at ¶¶ 3-4; *see also* Ex. E at 9:16-20, 11:3-15:22, 16:4-21, 29:19-30:11; Ex. L at 101:2-16, 102:2-103:18.)

13.     Since Schaeffer made the decision to classify Cogent's RAMs and GAMs as exempt, he never has received a complaint, or learned of any complaints, in which a RAM or GAM complained about:  (i) his or her classification as exempt; (ii) not being paid for overtime; (iii) the hours that he or she worked; or (iv) not being allowed to leave the office to conduct outside sales activities.[12]  (Ex. E at 33:25-34:10, 39:19-40:5, 44:16-45:12.)  Cogent's Director of Human Resources also has never received, or been made aware of, any such complaints from any RAM or GAM or Cogent management.[13]  (Ex. C at ¶ 8.)  Further, Cogent has never been the subject of a wage and hour investigation by the Department of Labor.  (Ex. E at 41:2-4.)

---

Cogent additionally affords its RAMs and GAMs significant autonomy to negotiate contract terms and close deals with customers.  (*See* Ex. G at ¶ 22; Ex. J at ¶ 14; Ex. I at ¶ 17.)

[12] It was not until the Named Plaintiffs filed this lawsuit that Cogent had any awareness that certain RAMs and GAMs believed that Cogent misclassified them as exempt employees under the FLSA.  (Ex. E at 34:4-6, 40:3-5.)

[13] Additionally, two of Cogent's Directors of Sales testified that they never received any complaints from any of the RAMs or GAMs they supervised regarding their hours worked or being paid for overtime.  (Ex. M at 42:24-43:9, 53:10-14, 59:16-20; Nomura Dep. 25:24-26:5, 29:8-23, 30:7-11, attached as Ex. O.)

14.     Notably, every other week Schaeffer leads a phone call with the entire Cogent sales force in which the RAMs and GAMs participate.  (*Id.* at 54:14-23.)   According to Schaeffer, the purpose of this call is to "update all the employees in the company of any new initiatives and to provide a [forum] for anyone to raise any questioning, either by naming themselves or anonymously."   (*Id.* at 54:24-55:3.)   Never once during those calls, or anonymously prior to those calls, has any RAM or GAM complained about overtime or the number of hours that he or she worked.  (*Id.* at 55:4-10.)

15.     Further, Schaeffer visits (or at least tries to visit) every Cogent sales office once a year.  (*Id.* at 38:22-39:3.)  The main purpose of this visit is for Schaeffer to meet with the RAMs and GAMs.  (*Id.* at 39:4-8.)  During conversations on such visits, no RAM or GAM has ever complained to Schaeffer about the number of hours that he or she worked, his or her wages, or working overtime.  (*Id.* at 39:9-18.)

## V.     STANDARD OF REVIEW

Under Rule 56, summary judgment is appropriate where the movant demonstrates that no genuine issue exists as to any material fact and that the moving party is entitled to summary judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of their case upon which they bear the burden of proof.  *Celotex*, 477 U.S. at 323; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A reviewing court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *see Celotex*, 477 U.S. at 322-23;

*Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  To avoid summary judgment, the nonmoving party must establish doubt as to a material fact and a genuine issue for trial. *Matsushita*, 475 U.S. at 586; *see also Anderson,* 477 U.S. at 256 (interpreting Rule 56(e)).  Here, Plaintiffs lack sufficient evidence to carry their burden of proof that the claims of the 3-Year Opt-In Plaintiffs and the 2-Year Opt-In Plaintiffs are not time barred; accordingly, summary judgment in Cogent's favor is appropriate.

### VI.     ARGUMENTS AND AUTHORITIES

**A.     The FLSA Generally Provides for a Two-Year Statute of Limitations.**

The FLSA generally provides for a two-year statute of limitations for a cause of action alleging unpaid overtime, but extends the statute of limitations to three years if the violation was willful.  29 U.S.C. § 255(a); *see also Reyes v. Tex. EzPawn, LP*, 459 F. Supp. 2d 546, 565 (S.D. Tex. 2006).  In order for Plaintiffs to take advantage of the longer statute of limitations period for their claims, they bear the burden of proving that Cogent willfully violated the FLSA by classifying them as exempt employees.  *See Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990); *Reyes*, 459 F. Supp. 2d at 565.  To establish a willful violation, Plaintiffs must show that Cogent "either knew or showed reckless disregard as to whether its conduct was prohibited by the statute."  *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009) (*quoting McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)); *see also Reyes*, 459 F. Supp. 2d at 565-66 ("Defendant does not need to rely on any evidence whatsoever.  Rather, Plaintiffs were required to present affirmative evidence of Defendant's alleged knowledge or reckless disregard for the FLSA statute and this they failed to do.").

"Evidence of willfulness includes 'admissions from management that they knew they were violating [the] FLSA prior to the lawsuit' and 'continu[ing] a practice without further

investigation after it was informed by the Wage and Hour office that its payment method violated [the] FLSA." *Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 713 (S.D. Tex. 2012) (*quoting Villegas v. Dependable Const. Servs., Inc.*, No. 4:07-cv-2165, 2008 WL 5137321 (S.D. Tex. Dec. 8, 2008)).   Importantly, an employer does not act willfully simply because it fails to seek legal advice on its payment method. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990); *Allen*, 846 F. Supp. 2d at 713.   Further, a negligent violation does not amount to a willful violation, and unreasonable (but not reckless) conduct likewise does not amount to a willful violation. *Mireles*, 899 F.2d at 1416; *see also McLaughlin*, 486 U.S. at 135 n.13 ("If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful . . . .   If an employer acts unreasonably, but not recklessly, in determining its legal obligations, then . . . it should not be . . . considered [willful].").

In FLSA collective actions, the statute of limitations period for a named plaintiff begins to run from the date the named plaintiff files his or her complaint, while the limitations period for an opt-in plaintiff begins to run from the date the opt-in plaintiff files his or her written consent to join the collective action.   29 U.S.C. § 256; *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008); *Switzer v. Wachovia Corp.*, No. H-11-1604, 2012 WL 1231743, at *1 (S.D. Tex. Apr. 12, 2012).   Accordingly, here, the statute of limitations period for the Named Plaintiffs began to run on December 21, 2011 and the statute of limitations period for the Opt-In Plaintiffs began to run on the dates they filed their respective Notices of Consent with this Court. *See supra* Section IV.A.

**B.   The Claims of the 3-Year Opt-In Plaintiffs Are Time Barred Regardless of the Applicable Statute of Limitations Period.**

The 3-Year Opt-In Plaintiffs filed their Notices of Consent to join this collective action *more than three years* after the termination of their employment relationships with Cogent.   (*See*

Exs. A, C-1-C-45.)  As discussed in Section C, *infra,* Cogent does not concede that it violated the FLSA by classifying Plaintiffs as exempt, nor does it concede that any purported FLSA violation was willful.  Cogent, therefore, maintains that the two-year statute of limitations applies to the claims of all of the Plaintiffs in this lawsuit.  Nevertheless, even if Cogent's alleged violations were willful (which Cogent denies), thereby providing for the extended limitations period, the 3-Year Opt-In Plaintiffs' claims are still time barred.  *See Alexander v. TGF Precision Haircutters, Inc.*, No. H-05-3189, 2006 WL 1030067, at *2 (S.D. Tex. Apr. 19, 2006)[14]; *see also Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-bbc, 2011 WL 10069108, at *14 (W.D. Wis. Apr. 11, 2011) (dismissing claims of opt-in plaintiffs whose employment with the defendant ended more than three years prior to the dates they filed their consent forms).[15]  Thus, because the 3-Year Opt-In Plaintiffs' claims are time barred under *both* the FLSA's two-year and three-year statutes of limitations, their claims should be dismissed with prejudice from this lawsuit.

C.    **The FLSA's Two-Year Statute of Limitations Applies to This Case Because Cogent Did Not Willfully Violate the FLSA.**

As discussed in Section IV.E, *supra*, Cogent made a good faith and reasonable determination to classify its RAMs and GAMs as exempt based on their expected job duties and outside sales activities.  *See Villegas v. Dependable Const. Servs., Inc.*, No. 4:07-cv-2165, 2008 WL 5137321, at *26-27 (S.D. Tex. Dec. 8, 2008)*; see also Rodriguez v. Potter*, No. H-03-5325,

---

[14] In *Alexander,* hair salon employees brought a collective action against their former employer alleging failure to pay overtime under the FLSA.  *Id.* at *1.  While not conceding that the longer three-year statute of limitations applied, defendants asserted that the plaintiff's claims were untimely even under the extended limitations period.  *Id.* at *2, n.3.  Defendants demonstrated that they terminated the plaintiff's employment in April, 2001 and that the plaintiff did not join the collective action until September 7, 2004, almost five months after the operative date for limitations purposes.  *Id.* at *2.  As a result, the court granted defendants' motion for summary judgment, finding that the plaintiff's claims were time barred.  *Id.* at *2.

[15] *See also Khadera v. ABM Indus. Inc.*, No. C08-0417 RSM, 2012 WL 581580, at *6 (W.D. Wash. Feb. 22, 2012) (same); *Hernandez v. Caviness Packing Co., Inc.*, No. 2:07-CV-142-J, 2008 WL 2404963, at *2 (N.D. Tex. June 13, 2008) (same); *Camp v. The Progressive Corp.*, No. 01-2680, 2003 WL 22800948, at *5 (E.D. La. Nov. 25, 2003) (same).

2005 WL 2030838, at *3 (S.D. Tex. Aug. 22, 2005) (finding that the defendant's improper exemption decisions, if any, were inadvertent rather than knowing or the result of reckless indifference).  This decision was made by Cogent's Chief Executive Officer, who had read the FLSA and other general publications regarding the statute and previously classified employees as exempt and non-exempt in other companies that he founded.  *See supra* Section IV.E.  *See Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990) (upholding the trial court's finding that the employer's violation was not willful because the employer had discussed minimum wage requirements with the Texas Employment Commission and had reviewed some "brochures and pamphlets" on the topic).  Schaeffer's decision to classify Cogent's sales employees as exempt was further motivated by the practice in the telecommunications industry of classifying sales employees similar to Cogent's RAMs and GAMs as exempt and paying them a salary plus commissions.  *See supra* Section IV.E.; *see also Hanscom v. Carteret Mortgage Corp.*, No. 1:06-CV-2483, 2008 WL 4845832, at *4-5 (M.D. Pa. Nov. 5, 2008) (finding that the defendant's alleged misclassification of the plaintiff was not willful because the defendant's founder and CEO relied on existing law and industry practice to classify the defendant's loan originators as exempt); *Palmieri v. Nynez Long Distance Co.*, No. 04-138PS, 2005 WL 767170, at *10 (D. Me. Mar. 28, 2005) (finding that the defendant's classification of the plaintiff as exempt was not willful because the defendant believed, based on industry studies, that such highly compensated sales employees were exempt).

Further, since Schaeffer made the initial decision to classify Cogent's RAMs and GAMs as exempt, Cogent's expectation that its RAMs and GAMs conduct sales activities outside the office, as well as exercise independent judgment and discretion in conducting their sales activities, has remained constant.  *See supra* Sections IV.C. and IV.D.  Additionally, despite the

14

various avenues in which Cogent provides its RAMs and GAMs an opportunity to raise complaints regarding issues such as their classification, Cogent has not received any complaints from any RAMs or GAMs about Cogent's alleged failure to pay overtime until the Named Plaintiffs filed this lawsuit.  *See supra* Section IV.E; *see also Gorey v. Manheim Servs. Corp.*, 788 F. Supp. 2d 200, 209 (S.D.N.Y. 2011) (in finding that the defendants' violations were not willful, the court noted that the defendants' classification of the plaintiffs as exempt outside sales representatives had never been criticized by any employee or government entity).[16]

Moreover, Plaintiffs lack any evidence that Cogent's management knew they were violating the FLSA by classifying Cogent's RAMs and GAMs as exempt employees or that Cogent continued to pay its RAMs and GAMs on a salary plus commission basis (without any overtime compensation) despite information learned from the Department of Labor.  *See Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 713 (S.D. Tex. 2012); *see also Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 553 (5th Cir. 2009) (concluding that the plaintiff did not provide evidence that the defendant actually knew its pay structure violated the FLSA or that it failed to investigate the plaintiff's complaints and, thus, without more evidence, the plaintiff's allegations of willfulness could not survive summary judgment).

Accordingly, Cogent is entitled to summary judgment because Plaintiffs cannot succeed on their burden of offering sufficient and competent evidence that Cogent either intentionally violated the FLSA or that it recklessly disregarded the FLSA by classifying its RAMs and GAMs

---

[16] *See also Martin v. PepsiAmericas, Inc.*, No. 1:07CV91-SA-JAD, 2008 WL 4755394, at *5 (N.D. Miss. Oct. 28, 2008) (explaining that the plaintiff failed to meet her burden on willfulness because she never complained to the defendant during her employment about being paid incorrectly or her hours worked); *Palmieri*, 2005 WL 767170, at *10 (in finding that the defendant did not willfully violate the FLSA, the court noted that there was no evidence that anyone, including the plaintiff, put the defendant on notice during the plaintiff's employment that the defendant's belief regarding the plaintiff's exemption classification was mistaken).

as exempt.  *See Allen*, 846 F. Supp. 2d at 714 (holding that the defendant was entitled to summary judgment because the plaintiffs failed to produce sufficient evidence to create a genuine issue of material fact on willfulness); *see also Valcho v. Dallas County Hosp. Dist.*, 658 F. Supp. 2d 802, 810 (N.D. Tex. 2009) (granting summary judgment for the defendant because the plaintiff's evidence was insufficient to show that the defendant did not believe in good faith that it properly classified the plaintiff as an exempt professional).  Because Plaintiffs lack sufficient evidence to create a genuine issue of material fact on whether Cogent's alleged FLSA violations were willful, the FLSA's two-year statute of limitations applies to this case.  *See Reyes v. Tex. EzPawn, LP*, 459 F. Supp. 2d 546, 566 (S.D. Tex. 2006).  Therefore, the claims of the 2-Year Opt-In Plaintiffs are untimely and should be dismissed with prejudice from this lawsuit. (*See* Exs. B, C-46-C-78.)  *See id; see also Camp v. The Progressive Corp.*, No. 01-2680, 2003 WL 22800948, at *4 (E.D. La. Nov. 25, 2003) (dismissing with prejudice the claims of plaintiffs who opted in more than two years after their last day of employment because the plaintiffs failed to create a fact question on willfulness).  Further, the claims of the remaining Opt-In Plaintiffs and the Named Plaintiffs should be limited by the two-year statute of limitations.[17]

## VII.
## CONCLUSION

For the reasons stated above, Cogent is entitled to summary judgment on the claims of the 3-Year Opt-In Plaintiffs because they are time barred regardless of whether the two-year or three-year FLSA statute of limitations applies to this case.  Cogent additionally is entitled to summary judgment on the claims of the 2-Year Opt-In Plaintiffs because its purported FLSA

---

[17] The claims of the remaining Opt-In Plaintiffs and the Named Plaintiffs are not subject to complete dismissal on limitations grounds.  However, should this Court deny Cogent's Motion to Decertify this collective action and a jury then find that Cogent misclassified the Named Plaintiffs and the remaining Opt-In Plaintiffs as exempt (which Cogent contests), any potential back pay award should be limited to two years from the date that this lawsuit was filed as to the Named Plaintiffs or that the Notices of Consent were filed as to the remaining Opt-In Plaintiffs.  *See Allen*, 846 F. Supp. 2d at 714; *Scott v. Farouk Sys., Inc.*, No. H-06-2182, 2007 WL 2317156, at *4 (S.D. Tex. Aug. 8, 2007).

violations were not willful.   Further, because Cogent's alleged misclassification of Plaintiffs was not willful, the two-year statute of limitations period applies to the claims of the Named Plaintiffs and any of the remaining Opt-In Plaintiffs.   Cogent, therefore, respectfully requests that this Court grant this Motion, dismiss with prejudice the claims of the 3-Year Opt-In Plaintiffs and the 2-Year Opt-In Plaintiffs, apply the two-year statute of limitations period to the FLSA claims remaining in this case, and grant Cogent all other relief to which it is entitled.